[No. A074723. First Dist., Div. Two. Oct. 16, 1997.]

KARL SCHOEN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FORESTRY AND FIRE PROTECTION, Defendant
and Respondent;
LOUISIANA-PACIFIC CORPORATION, Real Party in Interest.

**COUNSEL**

Rodney Richard Jones and Sharon E. Duggan for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz, IV, Assistant Attorney General, and John Davidson, Deputy Attorney General, for Defendant and Respondent.

Rawles, Hinkle, Carter, Behnke & Oglesby, Jared G. Carter and Cindee F. Mayfield for Real Party in Interest.

## OPINION

**LAMBDEN, J.**—Karl Schoen, Judith Vidaver, Roanne Withers, and Ron Guenther (collectively, Schoen), residents of Mendocino County, appeal from the denial of their writ of mandate. Schoen claims the California Department of Forestry and Fire Protection (CDF) abused its discretion when it approved analyses of cumulative impacts as "minor deviations" to two timber harvest plans (THP's). By classifying them as minor deviations, the documents were not subject to public review. Real party in interest, Louisiana-Pacific Corporation (Louisiana-Pacific), had submitted this information in light of the subsequently enacted California Code of Regulations, title 14, section 912.9 (rule 912.9).

The question before us is whether CDF abused its discretion in approving Louisiana-Pacific's analysis of cumulative impacts as minor deviations. We conclude the new regulations imposed in 1991 substantially changed the requirements regarding cumulative impacts evaluations. Once CDF requested an update of the cumulative impacts evaluation in light of the 1991 changes, the supplemental information provided could not be characterized as a "minor deviation." CDF therefore abused its discretion in classifying this amendment as minor.

### BACKGROUND

In April 1989, CDF approved THP 1-89-100 MEN (THP 100) and THP 1-89-145 MEN (THP 145) submitted by Louisiana-Pacific. The two plan sites are adjacent to each other on Louisiana-Pacific's timber production zone property in the Albion River drainage. As originally approved, the plans allowed the harvest of approximately 280 acres of second growth mixed conifer forest by a combination of clearcutting and shelterwood silvicultural methods.

With regard to a cumulative impacts analysis, the THP's approved in 1989 contained the identical discussion under the heading "Future," which was as follows: "One additional THP is presently being considered in the immediate

area. A tentative map of this future THP is included for your review. Modern environmentally sensitive harvesting methods using cable logging techniques, where appropriate, will allow for timber to be harvested in this area without causing a significant environmental impact when considered either separately or in conjunction with other events in the area. Cable yarding on the steeper slopes will minimize the potential for sediment to enter the stream system. Other potential adverse cumulative effects associated with the proposed THP have been considered and no problems have been identified.

"I am aware of no other projects which are being planned at this time in this area. Land adjacent to the plan area is predominately zoned TPZ [timber production zone]. It is probable that future activities will be consistent with this land use classification and that future harvesting in this area will conform to the forest practice act and other regulations which may exist at the time of future harvest. Review and observation of the Albion river shows that no significant cumulative adverse impact can be expected as a result of these harvesting operations or from the combined effect of these operations and other land use activities."

In addition, the approved plans contained a 15-item checklist completed by CDF, which requested a response to whether significant adverse cumulative impacts would be reasonably expected to occur in (1) surface soil erosion from harvest or roads, (2) mass soil movement from harvest or roads, (3) soil compaction from harvest, (4) chemical or biological properties of soil, (5) water quality from harvest or roads, (6) water temperature, or (7) suspended sediment, or to (8) fish or wildlife or their habitat, (9) recreation, (10) aesthetics, (11) rare or threatened or endangered species of plants or animals or to their habitats, (12) archaeological resources, (13) fire hazards (14) vehicular traffic, or (15) any of the above items when considered together. For all the items except fire hazards, the checklist indicated CDF did not expect any significant adverse cumulative impacts. With regard to fire hazards, it stated the following: "There will be a short term increase at least partially off set by the improved access and the availability of manpower and equipment during the operation. This plan is not in a High fire danger start area. Slash hould [*sic*] decay rapidly in this moist coastal climate."

A lawsuit challenging the approval of THP 100 and THP 145 ensued, which was ultimately dismissed for failure to exhaust administrative remedies. As a result of the litigation, timber operations were stayed until February 1992.

In 1991, the Board of CDF (board) enacted new regulations requiring THP's to contain (1) a written analysis of cumulative environmental impacts

(rule 912.9), (2) information concerning the spotted owl (Cal. Code Regs., tit. 14, §§ 919.9, 919.10), and (3) data on expanded watercourse and lake protections (Cal. Code Regs., tit. 14, §§ 916.1-916.10).

The new regulations required a cumulative impact assessment of the following resource subjects: watershed, soil productivity, biological, recreation, visual, and traffic. (Rule 912.9.) Under the new regulations, THP's had to include data on the pending project and also past, present, and reasonably foreseeable future projects. (*Ibid.*) Rule 912.9 also required a listing and description of the individuals, organization, and records consulted when assessing the cumulative impacts for each resource subject.

On April 22, 1992, about two months after lifting the stay on the timber operations, CDF formally required Louisiana-Pacific to amend THP 100 and THP 145 to reflect the changes Louisiana-Pacific had made for the protection of water courses and the spotted owl. CDF based its request on authority from Public Resources Code section 4583 and a First District opinion in Division Five, *Public Resources Protection Assn.* v. *Department of Forestry & Fire Protection*, A044789 (which was reversed in part by the Supreme Court on January 31, 1994, in *Public Resources Protection Assn.* v. *Department of Forestry & Fire Protection* (1994) 7 Cal.4th 111 [27 Cal.Rptr.2d 11, 865 P.2d 728] (*PuRePac*)).

In this same letter, CDF also made the following requests: "I am also requesting, at this time, that you evaluate cumulative impacts on each THP according to Board of Forestry Technical Rule Addendum No. 2, Cumulative Impacts Assessment, and amend the plans to reflect the results of your evaluation. [¶] The Department will consider your amendments to the plan under 14 CCR 1036. [¶] You may not operate on these plans until the requested amendments have been acted on by this Department."

Louisiana-Pacific refused to comply and after CDF issued a stop order, Louisiana-Pacific challenged CDF's action in court. In *Louisiana-Pacific Corp.* v. *Department of Forestry & Fire Protection* \*(Cal.App.), we found Public Resources Code section 4583 provided CDF with the discretion to require amendments to make the THP's conform to subsequently implemented regulations. The Supreme Court granted review of this case, but then dismissed review on August 18, 1994, after deciding *PuRePac, supra,* 7 Cal.4th 111, 120. The court in *PuRePac* held Public Resources Code section 4853 provided CDF with authority to require compliance with subsequent regulations. The THP in *PuRePac* had been approved prior to the enactment

---

\*Reporter's Note: Opinion (A057971) superseded by grant of review October 21, 1993 (S028951).

of regulations concerning the spotted owl (Cal. Code Regs., tit. 14, §§ 919.9, 919.10); the timber operator therefore had to comply with the later regulations by resubmitting its plan for approval, filing an amendment to the THP, or notifying CDF of " 'minor deviations' " immediately in writing. (*PuRe-Pac, supra,* 7 Cal.4th at p. 123.)

In a letter, dated September 30, 1994, CDF again requested amendments to THP 100 and THP 145. The letter stated in part: "The amendments should reflect any changes made or that will be made in actual operations not now reflected in the plans due to the rule changes for the following subjects:

"Watercourse and Lake protection (effective 10-23-91)

"Spotted Owl Consultation procedures (effective 5-28-91)

"Silvicultural Methods (effective 5-16-94)

"Site Preparation (effective 2-1-90)

"Domestic Water Supply Protection (effective 3-1-94)

"Hazard Reduction (effective 8-5-91)

"Wildlife Protection (effective 9-11-91)

"Marbled Murrelet Protection CCR 919.11 (effective 6-18-92)

"Late Successional Forest Stands (effective 3-1-94)

"Logging Roads and Landings (effective 2-1-90 & 2-13-91)

"Archeology Resource protection (effective 12-27-91)

"Cumulative effects evaluation (effective 8-26-91)

"I suggest that you review each section under each subject. Check the history of the sections. If the rule was adopted after your plan was approved, evaluate whether or not your plan needs to be amended to bring it into conformance. Normally, if the rule pertains to planning only, no action on your part is necessary. If the rule pertains to the actual timber operations, then you should amend the plan to bring it into conformance or use the 'substantial liabilities incurred' clause to request a waiver.

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I realize that the operations conducted last year have been in full compliance with the new regulations, but the plan needs to reflect actual ground operations. If they are different, the plans must be amended. Any amendments to the plans will be treated as outlined in 14 CCR 1036 and 1040.

"The Board of Forestry's rules on evaluating cumulative effects also became operative during the time these two plans were in court. While CDF did not require any landowner to amend existing plans when these new rules became effective, this is a major issue with the Friends of the Enchanted Forest. [¶] I suggest that you include an update of your information that was submitted with THP 1-91-080. As you have stated, an exhaustive cumulative effects analysis was done for the Albion River drainage during the review of 1-91-080-MEN. This analysis was done with the assumption that plans 100 and 145 were logged. A review of plan 080's file confirms your statement. Our conclusion on plan 080 was that there were no adverse cumulative effects occurring or were likely to occur if plan 080 were operated.

"Logically, we would come to the same conclusion on plans 100 and 145 since they were included in this later analysis. This conclusion would only hold if plans 100 and 145 were not changed and that nothing further had happened in the Albion River drainage after plan 080 was approved to change the analysis. You could bring the 080 cumulative effects analysis up-to-date. Included in this updated analysis would be any changes in the operations on plans 100 and 145 and any plans or projects that have been revealed within the assessment area since the approval of plan 080.

"If you have a better idea of what future plans or projects will be, you should include this within your analysis. We will include by reference the cumulative effects analysis done on plan 080."

On November 21, 1994, Louisiana-Pacific submitted as "minor amendments" supplemental information on watercourse protection, spotted owl consultation procedures, silvicultural methods, site preparation, domestic water supply protection, hazard reduction, wildlife protection, marbled murrelet protection, late successional forest stands, logging roads and landings, archeology resource protection, and a cumulative effects evaluation.

CDF approved the submissions as minor deviations to both THP's on December 1, 1994. CDF wrote, in pertinent part: "Your Amendment . . . to the above-referenced Timber Harvesting Plan has been accepted as being in conformance with the Rules and Regulations of the Board of Forestry and is now considered part of the plan. The determination to accept your request to

treat this as a minor deviation has been made based on the information presented in your amendment and a review of the Timber Harvesting Plan file. The amendment establishes a reduction in overall environmental disturbance and CDF's inspection reports confirm compliance with currently applicable watercourse rules. [¶] . . . Your proposal to remove winter period operations makes a significant contribution in reducing the potential for adverse environmental impacts. In addition, inspection reports for this THP contain observations which confirm that watercourse protection zones have been established in conformance with currently applicable Forest Practice Rules."

In a first amended petition for writ of mandate filed on February 2, 1995, Schoen claimed the acceptance of the submissions without public review violated the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and the Z'Berg-Nejedly Forest Practice Act of 1973 (FPA) (Pub. Resources Code, § 4511 et seq.), and "deprived the public of its statutory and constitutional right to provide meaningful comments about environmental issues relating to cumulative impacts" of THP 100 and THP 145.

The trial court denied the petition, ruling CDF did not abuse its discretion. The court found: "Essentially, CDF departed from the position which it took in 1992, and did not require [Louisiana-Pacific] to prepare an analysis pursuant to Rule 912.9. It did not abuse its discretion in doing so. Only 13 acres in THP 100 and 89 acres in THP 145 remained to be harvested. The minor deviations proposed by [Louisiana-Pacific] eliminated winter operations and rendered the harvesting less intrusive than allowed under the original plans approved in 1989.

"I conclude that CDF had no mandatory duty to set aside its approval of THPs 100 and 145, to require submission of the proposed minor deviations for further public review or comment, or to demand full compliance with Rule 912.9. See, *PuRePac* v. *CDF* (1994) 7 Cal.4th 111, at 122 [27 Cal.Rptr.2d 11, 865 P.2d 728]. Under the unique and procedurally convoluted circumstances of this case, I cannot say that CDF abused its discretion in dispensing with further public comment and review, and in giving due weight to the need for finality of these THPs."

Judgment was entered on May 9, 1996, and Schoen filed a timely notice of appeal on June 13, 1996.

DISCUSSION

### I. *Standard of Review*

Schoen contends CDF had a duty to permit the public to review the cumulative impacts analysis for THP 100 and THP 145, and its failure to do

so constituted an abuse of discretion. ■ " 'Abuse of discretion is established if the respondent [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' [Citations.] Only if the manner in which an agency failed to follow the law is shown to be prejudicial, or is presumptively prejudicial, as when the department or the board fails to comply with mandatory procedures, must the decision be set aside, however. [Citation.]" (*Sierra Club* v. *State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1236 [32 Cal.Rptr.2d 19, 876 P.2d 505] (*Sierra Club*).)

Both CDF and Louisiana-Pacific maintain the standard of review is whether substantial evidence supported its decision. (See *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 407 [253 Cal.Rptr. 426, 764 P.2d 278] ["The question, however, is not whether there is substantial evidence to support the [petitioner's] position; the question is only whether there is substantial evidence to support the [agency's] conclusion."].) Substantial evidence, they claim, clearly supported CDF's determination.

Since we find the agency did not act in accordance with the FPA and CEQA, and CDF's actions were prejudicial, we do not address the issue of substantial evidence.

## II.  *Statutory Background*

When arguing CDF abused its discretion, Schoen primarily relies on provisions in CEQA (Pub. Resources Code, § 21000 et seq.) and ignores provisions in the FPA stressed by CDF and Louisiana-Pacific. (All further unspecified code sections refer to the Public Resources Code.) CDF and Louisiana-Pacific dispute the relevance of the CEQA provisions stressed by Schoen, and focus on the FPA (§ 4511 et seq.) and administrative regulations (Forest Practice Rules; Cal. Code Regs., tit. 14 § 895 et seq.). Thus, we find it necessary at the outset to summarize the relevant FPA and Forest Practice Rules and their relationship with CEQA.

California regulates the harvesting of timber on private lands through the FPA (§ 4511 et seq.) and Forest Practice Rules (Cal. Code Regs., tit. 14, § 895 et seq.). The legislative intent in enacting the FPA is set forth in section 4513: "It is the intent of the Legislature to create and maintain an effective and comprehensive system of regulation and use of all timberlands so as to assure that: [¶] (a) Where feasible, the productivity of timberlands is restored, enhanced, and maintained. [¶] (b) The goal of maximum sustained production of high-quality timber products is achieved while giving consideration to values relating to recreation, watershed, wildlife, range and forage, fisheries, regional economic vitality employment, and aesthetic enjoyment."

The Legislature has provided for the Secretary of the Resources Agency to certify a regulatory program of a state agency as exempt from the requirement of an environmental impact report (EIR) under CEQA if the program requires the project be preceded by the preparation of a written report containing certain information on the environmental impacts of the project. (§ 21080.5, subd. (a).) "The document that functions as the equivalent of an EIR must also include a description of the proposed activity, its alternatives, and mitigation measures to minimize any significant adverse environmental impact, and must be available for a reasonable time for review and comment by other public agencies and the general public. (§ 21080.5, subd. (d)(3).) [¶] In January of 1976, pursuant to the provisions of section 21080.5, subdivision (a), the Secretary of the Resources Agency certified the regulatory scheme created by the [FPA]. Under the terms of section 21080.5, subdivision (c), that certification expressly exempts the [THP] process from the provisions of chapters 3 and 4 and section 21167 of CEQA. (§ 21080.5, subd. (c).)" (*Sierra Club, supra,* 7 Cal.4th at p. 1230.)

Under the FPA, CDF must approve a THP prior to any timber harvesting operation in this state. (§ 4582.) It constitutes an "abbreviated project plan[]" authorized by law rather than a "full-blown" EIR. (*Environmental Protection Information Center, Inc.* v. *Johnson* (1985) 170 Cal.App.3d 604, 620 [216 Cal.Rptr. 502] (*EPIC*).) THP's must include statutory information outlined in section 4582 and must be available for review and comment by the public and other public agencies. (§ 4582.6.) "The [CDF] shall invite, consider, and respond in writing to comments received from public agencies to which the plan has been transmitted and shall consult with those agencies at their request." (§ 4582.6, subd. (a).)

■ If CDF approves of the THP, it issues a notice of approval which includes a written response to " 'significant environmental points raised during the evaluation process,' including those points raised by members of the general public. [Citations.]" (*EPIC, supra,* 170 Cal.App.3d at pp. 611-612; see § 21080.5, subd. (d)(2)(iv).) "CEQA and its substantive criteria for the evaluation of a proposed project's environmental impact apply to the timber harvesting industry, and are deemed part of the FPA and the [Forest Practice] Rules." (*EPIC, supra,* 170 Cal.App.3d at p. 620.) In "approving timber harvesting plans, the board must conform not only to the detailed and exhaustive provisions of the [FPA], but also to those provisions of CEQA from which it has not been specifically exempted by the Legislature." (*Sierra Club, supra,* 7 Cal.4th at p. 1228.) The THP, therefore, is only exempt from chapters 3 and 4 of CEQA, which deal with the various requirements of an EIR. (7 Cal.4th at p. 1230.)

In 1991, the board enacted rule 912.9. This rule requires THP's to contain a cumulative impact assessment of the following resource subjects: watershed, soil productivity, biological, recreation, visual, and traffic. (Rule

912.9.) Rule 912.9 "sets out criteria imposed for cumulative impact assessment paralleling the criteria developed for EIR's in CEQA cases." (*East Bay Mun. Utility Dist.* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1127 [51 Cal.Rptr.2d 299].) Under the new regulations, THP's must include information about the pending project and also past, present, and reasonably foreseeable future projects. (Rule 912.9.) The registered professional forester who prepares the THP on behalf of the logging company is directed to consider both on- and off-site interactions of the plan "with the impacts of past and reasonably foreseeable future projects." (Rule 912.9, Tech. Rule Addendum No. 2.) The regulations also require CDF to supplement as needed the cumulative impacts information supplied to ensure "all relevant information is considered." (Cal. Code Regs., tit. 14 § 898.)

■ The statutory framework of the FPA, Forest Practice Rules, and CEQA therefore confer on CDF "the obligation to see that cumulative impacts and alternatives to the project, as well as other specified environmental information, be taken into consideration in evaluating [THP's]." (*Friends of the Old Trees* v. *Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1393 [61 Cal.Rptr.2d 297] (*Friends of the Old Trees*).) "CEQA specifically provides that a document written in lieu of an EIR, such as a THP, and submitted to a certified regulatory agency, such as the Department, include 'a description of the proposed activity with alternatives to the activity.' (§ 21080.5, subd. (d)(3)(A).) In *Sierra Club,* the Supreme Court stated that the THP must 'include a description of the proposed activity, *its alternatives,* and mitigation measures to minimize any significant adverse environmental impact . . . .' (*Sierra Club, supra,* 7 Cal.4th at p. 1230, italics added.) Moreover, the forestry rules governing the preparation of [THP's] require that the cumulative impact of the proposed timber harvesting be considered as a substantive criterion for evaluating the environmental impact of the proposed project. [Citation.]" (*Friends of the Old Trees, supra,* 52 Cal.App.4th at pp. 1393-1394.)

Once a THP has been approved, amendments may be made (§ 4591). Section 4591 provides: "Amendments to the original timber harvesting plan may be submitted detailing proposed changes from the original plan. Substantial deviations from the original plan shall not be undertaken until the amendment has been filed with, and acted upon, by the department in accordance with Sections 4582.7 and 4583. . . ."

CDF may require amendments to make THP's comply with subsequently enacted regulations. "[A]ll timber operations shall conform to any changes or modifications of standards and rules made thereafter unless prior to the adoption of such changes or modifications, substantial liabilities for timber

operations have been incurred in good faith and in reliance upon the standards in effect at the time the plan became effective and the adherence to such new rules or modifications would cause unreasonable additional expense to the owner or operator." (§ 4583.)

In section 4591.1, the Legislature has directed the board to "specify by regulation those deviations which may be undertaken by an operator without submission of an amended plan but which must subsequently be reported to the department, and provide for the manner of so reporting." "Minor deviations may be undertaken by the person who submitted the plan without submission of an amendment to the plan and shall be reported immediately in writing to the Director." (Cal. Code Regs., tit. 14, § 1040 (rule 1040).) " 'Minor deviations' means any change, minor in scope, in a plan which can reasonably be presumed not to make a significant change in the conduct of timber operations and which can reasonably be expected not to significantly adversely affect timberland productivity or values relating to soil, water quality, watershed, wildlife, fisheries, range and forage, recreation, and aesthetic enjoyment." (Cal. Code Regs., tit. 14, § 895.1.) All other changes are presumed to be "substantial," and are subject to public review (§§ 4591, 4582.7, 4583).

III. *Updating the Cumulative Impacts Analysis to Consider Substantially Changed Regulations Could Not Be Characterized as a Minor Amendment*

■ Although the statutory and regulatory framework clearly requires THP's after 1991 to contain an extensive evaluation of cumulative impacts, the statutes and regulations do not specifically address the question posed here: When CDF used its discretion to require Louisiana-Pacific to bring its cumulative impact assessment up to date with the new regulations (rule 912.9), could such an amendment be labeled as a minor deviation, exempting it from public review? Schoen argues no, and cites the importance of public review and cumulative impacts in CEQA. CDF and Louisiana-Pacific contend CDF has discretion to make this determination and rely on provisions in the FPA and the Forest Practice Rules.

In its petition for rehearing, Louisiana-Pacific contends that its cumulative impact analysis complied completely with the regulations in 1989; this court, therefore, cannot review the 1989 analysis. We, of course, presume the THP's complied completely with the regulations in 1989. This does not, however, prohibit us from examining the cumulative impacts analysis completed in 1989 to compare it with the evaluation required in 1991 under rule 912.9. CDF required Louisiana-Pacific to "evaluate cumulative impacts on each THP according to Board of Forestry Technical Rule Addendum No. 2,

Cumulative Impacts Assessment" and to "amend the plans to reflect the results" of the evaluation; thus, a review of the decision to treat this updated information as a minor deviation requires a comparison of the information required by the regulations in 1989 with the information mandated by the 1991 regulations. Our review does not assess the adequacy of the cumulative impacts analysis completed in 1989, nor does it make any factual findings regarding the original THP's; but rather, we examine the information provided in 1989 in light of the information required under the 1991 regulations to determine whether such supplemental information could be characterized as a minor amendment. By arguing this court cannot examine the 1989 evaluation, Louisiana-Pacific is attempting to remove any court review of the amendment process.

Schoen contends CDF exercised its discretion on April 21, 1992, and required Louisiana-Pacific to amend both THP's to comply with rule 912.9; it was thereafter, Schoen maintains, barred from modifying its position to lessen the requirements. Schoen offers no authority to support this contention and we reject imposing such an inflexible and unreasonable rule onto CDF. CDF is not wedded to its prior decision; especially when the original decision was based on a Court of Appeal decision later reversed in part by the Supreme Court (see *PuRePac, supra*, 7 Cal.4th 111). Thus, we find, CDF did not abuse its discretion simply because it modified its position.

The second aspect of Schoen's argument, however, is more persuasive. Schoen contends CDF abused its discretion by approving the analysis of cumulative impacts as minor deviations, because this action denied the public any review of the documents. It is undisputed that the public reviewed the cumulative impacts analysis completed in 1989. The question is whether the updated cumulative impacts analysis contained significantly more information which should not have been shielded from the public review process.

The THP's approved in 1989 contained the identical discussion under the heading "Future," which was as follows: "One additional THP is presently being considered in the immediate area. A tentative map of this future THP is included for your review. Modern environmentally sensitive harvesting methods using cable logging techniques, where appropriate, will allow for timber to be harvested in this area without causing a significant environmental impact when considered either separately or in conjunction with other events in the area. Cable yarding on the steeper slopes will minimize the potential for sediment to enter the stream system. Other potential adverse cumulative effects associated with the proposed THP have been considered and no problems have been identified.

"I am aware of no other projects which are being planned at this time in this area. Land adjacent to the plan area is predominately zoned TPZ [timber

production zone]. It is probable that future activities will be consistent with this land use classification and that future harvesting in this area will conform to the forest practice act and other regulations which may exist at the time of future harvest. Review and observation of the Albion river shows that no significant cumulative adverse impact can be expected as a result of these harvesting operations or from the combined effect of these operations and other land use activities."

In addition, the plans included short answers to a 15-item checklist completed by CDF. It indicated that CDF did not expect any significant adverse cumulative impacts for each item on the checklist, except the one related to fire hazards.

The cumulative impacts evaluations in the original THP's do not provide any information on the various resource subjects specified in rule 912.9; nor do they contain data on past, present and reasonably foreseeable future projects (rule 912.9). Thus, the THP's do not address the manner in which these projects may compound or alter the impacts of other projects.

CDF acknowledged in its letter of September 30, 1994, the original plans did not adequately address the following areas: watercourse and lake protection, spotted owl consultation procedures, silvicultural methods, site preparation, domestic water supply protection, hazard reduction, wildlife protection, marbled murrelet protection, late successional forest stands, logging roads and landings, archeology resource protection, and cumulative effects.

Additionally, CDF approved THP 100 and THP 145 with the following recognition: "It is probable that future activities will be consistent with this land use classification and that future harvesting in this area will conform to the forest practice act and other regulations which may exist at the time of future harvest." Although Louisiana-Pacific acknowledged future operations would have to comply with subsequent regulations, it obviously could not and did not submit the documents and research supporting this assertion.

Louisiana-Pacific contends the public did review THP 1-91-080 MEN (THP 080), which was submitted by Louisiana-Pacific in 1991. THP 080 contained a comprehensive rule 912.9 analysis and was based on the complete logging of THP 100 and THP 145. Louisiana-Pacific asserts: "Members of the public had the opportunity for review and comment on *each* THP approved before and after THPs 100 and 145, and thus had access to all information available to CDF. Under these circumstances, CDF was justified in concluding that new and *additional* cumulative impact analyses did not need to be performed for THPs 100 and 145, and that no additional public comment was required." (Italics added.)

The public may have had an opportunity to review the rule 912.9 analysis for THP 080, but it never had an opportunity to review any of the documents supporting the specific updated analyses for THP 100 and THP 145. The record before us does not contain THP 080, and we will not presume its rule 912.9 analysis would be identical to that of THP 100 and THP 145. Furthermore, no statute or rule provides an agency with the discretion to use the cumulative impacts analysis in one plan as a substitute for the required analysis in another project. (Schoen requests judicial notice of two letters which purportedly show other undisclosed THP's were operating in the watershed, but since these letters are not in the administrative record and are irrelevant to our determination [since we are not completing a substantial evidence analysis], we refuse this request.)

CDF and Louisiana-Pacific contend *PuRePac* supports a finding of no abuse of discretion, because it stated the forester could choose to comply with a subsequently enacted regulation by notifying CDF of the minor deviation. (*PuRePac, supra,* 7 Cal.4th 111, 123.) However, the Supreme Court in *PuRePac* did not determine whether a supplemental cumulative impact analysis could be considered a minor deviation when the original THP did not contain much of the information required under rule 912.9; nor did it consider CDF's role in accepting the submitted information as a minor deviation. Instead, the Supreme Court found the timber operations were required to comply with the regulations on the northern spotted owl, and concluded: "Louisiana-Pacific, therefore, may select the alternative in rule 919.9 that it finds best meets the 'on-the-ground circumstances' and then, depending on the alternative that it has selected, resubmit its plan for approval, present the information required by rule 919.9 in an amendment to the original timber harvesting plan, or, if the timber harvester concludes that the alternative in rule 919.9 that it has selected effects only a 'minor deviation' from the original plan, notify the director of the department of the deviation immediately in writing. . . . As Louisiana-Pacific has yet to indicate the means by which it will comply with rule 919.9, we express no opinion as to whether it must secure the department's approval before commencing operations." (*PuRePac, supra,* 7 Cal.4th at p. 123.)

In addition, *PuRePac* was concerned with a change in "operations" which impacted the "take" of an individual northern spotted owl (Cal. Code Regs., tit. 14, § 919.9), which is a very specific evaluation, related to the operation of the timber harvest. In contrast, an evaluation of the cumulative impacts on the watershed resources, soil productivity, biological resources, recreational resources, and visual resources (rule 912.9) is broad and encompassing. It does not relate to the operations of timber harvest, but the information and analysis which need to occur prior to any timber operations. Such an

analysis under rule 912.9, even if it reveals the project will have no cumulative impacts, could be classified as a minor deviation only if it updated or supplemented an existent evaluation which provided more information than the boilerplate requirements prior to 1991. (When the original THP [or substantial amendment] contains a comprehensive analysis of cumulative impacts, section 4591.1 unquestionably provides CDF with the discretion to determine whether the supplemental data are minor or significant deviations.)

It is true, as CDF argues, section 4591.1 provides the board with discretion to "specify by regulation those deviations which may be undertaken by an operator without submission of an amended plan" and rule 1040 permits the forester to make minor deviations "without submission of an amendment to the plan." Minor deviations, however, mean any change to a plan "which can reasonably be presumed not to make a significant change in the conduct of timber operations and which can reasonably be expected not to significantly adversely affect timberland productivity or values relating to soil, water quality, watershed, wildlife, fisheries, range and forage, recreation, and aesthetic enjoyment." (Cal. Code Regs., tit. 14, § 895.1.) CDF cannot properly conclude the modification is minor given the significant change in the regulations and the fact Louisiana-Pacific provided no more information than was required in 1989. Once CDF used its discretion to require Louisiana-Pacific to provide a cumulative impacts analysis to "evaluate cumulative impacts, according to Board of Forestry Technical Rule Addendum No. 2," it could not properly determine any modifications to the operations and plan were minor, and not subject to public review.

CDF and Louisiana-Pacific contend CDF has never required compliance with rule 912.9 for THP's approved prior to 1992. However, CDF requested Louisiana-Pacific to consider the changes in the evaluation caused by the new regulations. Given that Louisiana-Pacific's original cumulative impact analysis, which completely complied with the 1989 regulations, did not address many of the resource subjects specified in rule 912.9 and did not provide data on past, present, and reasonably foreseeable future projects as required by this 1991 regulation, the requested amendment could not possibly be minor.

The significance of a comprehensive cumulative impacts evaluation is stressed in CEQA. (§ 21083, subd. (b); Cal. Code Regs., tit. 14, §§ 15350, 15355; see, e.g., *Californians for Native Salmon etc. Assn.* v. *Department of Forestry* (1990) 221 Cal.App.3d 1419, 1423 [271 Cal.Rptr. 270].) Moreover, section 21080.5, subdivision (d)(3)(A), requires a plan submitted in lieu of an EIR to include alternatives to the proposed activity and "mitigation measures to minimize any significant adverse environmental impact."

CDF contends section 21080.5 is irrelevant, because the timber harvest review program has been certified for years as an exempt program. However, CDF must apply the provisions of the FPA as well as "those provisions of CEQA from which it has not been specifically exempted by the Legislature." (*Sierra Club, supra,* 7 Cal.4th at p. 1228.) "Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]" (*Id.* at p. 1230.) "The Legislature has not included timber harvesting operations within any of the classes of projects that are exempt from CEQA under sections 21080 and 21084. We therefore reject . . . assertions that timber harvesting is 'exempt' from CEQA. Section 21080.5 compels instead the conclusion that timber harvesting in this state is exempt only from chapters 3 and 4 of CEQA and from section 21167 of that act." (*Id.* at p. 1231, fn. omitted.)

CDF also argues section 21080.5 applies to the original THP, but does not apply to an amendment. CDF claims: "Moreover, the specific 'review and comment' requirement of section 21080.5(d)(3)(ii), specifically relied upon by appellants, is already set forth in section 4582.6 and section 4582.7 of the Act, and those provisions, which are applicable to the initial review of timber harvest plans, fully satisfy the program exemption requirements of section 21080.5(d)(3)(ii). Appellants' efforts to take what is clearly a requirement for *initial* plan reviews under an EIR exempt program and apply it instead to the post-approval *amendment* of an individual THP is simply meritless." The reasons underlying the requirements for the initial plan, however, do apply to an amendment when the initial plan fails to contain much of the newly required information. Furthermore, section 21080.5 emphasizes the importance of a cumulative impacts evaluation to the environmental review process.

Louisiana-Pacific contends the limited nature of the remaining timber operations on THP 100 and THP 145 supported CDF's decision to define the modifications as minor. Only 13 of the original 240 acres on THP 100, and 89 of the original 241 acres on THP 145, remain available for operations. Such information is relevant to a substantial evidence review, but is irrelevant to a review of CDF's authority to permit a forester to bypass the public review process.

Public review is essential to CEQA. The purpose of requiring public review is " ' "to demonstrate to an apprehensive citizenry that the agency has, in fact, analyzed and considered the ecological implications of its action." ' [Citation.]" (*Sierra Club, supra,* 7 Cal.4th at p. 1229.) Public review permits accountability and " 'informed self-government.' " (*Ibid.*)

The court in *Friends of the Old Trees, supra,* 52 Cal.App.4th at page 1402 stressed the critical need to recirculate to the public all information relating to a cumulative effects analysis prior to adding the documents to the agency file. "[P]ublic review and comment . . . ensures that appropriate alternatives and mitigation measures are considered, and permits input from agencies with expertise in timber resources and conservation." (*Hewlett* v. *Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 525 [63 Cal.Rptr.2d 118].) Thus public review provides the dual purpose of bolstering the public's confidence in the agency's decision and providing the agency with information from a variety of experts and sources.

The necessity for public review does not diminish simply because the forester and CDF determine the change in operation will not have any environmental impact. Under CEQA, even when the agency determines a project will have no significant environmental impact, the agency must prepare a negative declaration. The documents supporting this decision are still subject to public review. (Cal. Code Regs., tit. 14, § 15071, subd. (c).)

Here, Louisiana-Pacific conducted its own updated cumulative impact analysis, and the amendment was not afforded any public review. Louisiana-Pacific's analysis may be completely accurate, but under CEQA, CDF must receive data on this critical subject from other experts and sources before making its final assessment.

CDF did conclude Louisiana-Pacific's change in operations, which was to remove winter period operations, reduced the potential for adverse environmental impacts. However, CDF stated at oral argument that it was comparing the modification to the original THP. A modification in response to a more stringent regulation would necessarily lessen, or at least not increase, the adverse environmental effects of the original plan. Thus, if the comparison is to the original plan, all modifications in response to subsequent, more stringent regulations, would be "minor" deviations.

CDF and Louisiana-Pacific assert this situation is analogous to a supplemental EIR. California Code of Regulations, title 14, section 15162 et seq. authorizes a public agency to allow an addendum to an already approved EIR, provided the circumstances triggering the preparation of a more formal subsequent EIR are not present. (See § 21166; see also *Fund for Environmental Defense* v. *County of Orange* (1988) 204 Cal.App.3d 1538, 1544 [252 Cal.Rptr. 79].) Generally, after the project has been approved, "the interests of finality are favored over the policy of encouraging public comment."

(*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1993) 6 Cal.4th 1112, 1130 [26 Cal.Rptr.2d 231, 864 P.2d 502].) Preparation and recirculation of a supplemental EIR for an approved project is the exception (*Fund for Environmental Defense* v. *County of Orange, supra,* 204 Cal.App.3d at pp. 1550-1552).

A supplemental EIR, however, differs significantly from the situation here. With a supplemental EIR, the public has already reviewed the cumulative impact analysis in the original EIR. The concern is whether the "change" in the plan affects the prior analysis. Here, as Schoen asserts, there "has been no argument about changes in an already approved project or changed circumstances, because the public was never given the opportunity to critique the documentation and analysis that was submitted." The cumulative impacts analysis in 1989 was subject to public review, but it was silent on many of the critical subjects now required by the regulations. Further, when a supplemental EIR is approved, the record can be reviewed. Here, none of the updated information has been reviewed, and THP 080, which was used as a basis for finding the information to be a "minor deviation," was not even included in the record. Had the cumulative impact analysis in the original THP's contained a significant amount of the information now required by rule 912.9, analogizing this statute to a supplemental EIR would have been more appropriate.

In accepting the cumulative impact analysis as a minor modification when the approved THP's provided only the minimal information required by the regulations prior to 1991, CDF failed to proceed in the manner prescribed by CEQA and the FPA. CDF has the discretion to determine whether a change in operations is so minor the plan does not need to be amended, but it abuses its discretion when it determines that supplemental information responding to a significant change in the regulations, especially when it relates to such a critical subject as cumulative impacts, can be added to the plan without any public review. Prejudice is presumed because the public was denied its right to review as required by CEQA, and CDF relied exclusively on information provided by the forester. CDF therefore did not consider any information from other public agencies and their experts, which may have resulted in a different analysis or conclusion (see § 4582.6).

In holding CDF did not comply with CEQA and the FPA we are not suggesting CDF's actions were necessarily pernicious. Instead, we are concerned about CDF's permitting a forester to "update" cumulative impacts information as a minor modification, partially because it has determined the critical information has already been provided in a THP for a separate and

distinct project. Such a practice would make it impossible to have any meaningful public review of the cumulative impacts of the project being modified. Furthermore, it prevents any public input on whether the projects have identical cumulative impacts analyses. " ' "The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." ' " (*Kunec* v. *Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 515 [64 Cal.Rptr.2d 143], citing *Register Div. of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 907 [205 Cal.Rptr. 92].)

This holding will not undermine the policy of presuming an approved THP is valid (see *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 6 Cal.4th 1112, 1132). THP's are conclusively presumed to comply with the requirements at the time of their approval; but section 4583 makes it clear THP's are not presumed to be in conformance with subsequently enacted rules and standards. When the original plan contains little information on this critical subject, and CDF has exercised its discretion in requiring the information, it cannot avoid public review and defeat the objective of CEQA by classifying the amendment to the plan as minor.

In its petition for rehearing, Louisiana-Pacific complains that we have created "the false impression that CDF abdicated its duty to evaluate cumulative impacts in 1989," and we have improperly made a factual finding regarding its cumulative impacts analysis in 1989. Louisiana-Pacific, however, misconstrues our holding and analysis. We base our conclusion on the presumption that THP 100 and THP 145 complied completely with the regulations at the time of their approval. This does not mean we are prohibited from examining the information provided in 1989 and the information required by CDF to determine whether updating the 1989 evaluation could possibly constitute a minor amendment. Here, CDF required the supplemental evaluation to consider the significantly changed regulations. Because of the significant change in the regulations and the dearth of information required under the regulations prior to 1991, the amendment on this critical information could not be labeled as minor. (In some instances the amendment may be deemed minor if the cumulative impacts analysis in the THP contained substantially more information than that required by the regulations prior to 1991.)

## CONCLUSION

We find CDF abused its discretion when it classified the modifications to THP 100 and THP 145 as minor. CDF does not have the discretion to streamline procedures in a manner which denies the public any review of an amendment when the supplemental information on cumulative impacts is responding to significant additional requirements. Accordingly, we reverse the judgment and Schoen is awarded costs.

Kline, P. J., and Ruvolo, J., concurred.

On November 7, 1997, the opinion was modified to read as printed above.