[No. B008490. Second Dist., Div. One. July 10, 1985.]

AMERICAN MEDICAL INTERNATIONAL, INC., et al.,
Plaintiffs and Appellants, v.
BEVERLEE A. MYERS, as Director, etc., Defendant and Respondent.

**COUNSEL**

Weissburg & Aronson and Patric Hooper for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Anne S. Pressman and Richard J. Magasin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

DALSIMER, J.*—Plaintiffs were corporate providers of medical care to
Medi-Cal beneficiaries during the fiscal years ending in 1969-1973. Plain-
tiffs' cost reports with the State Department of Health Services for those
fiscal years sought reimbursement for costs plaintiffs had incurred to main-
tain their corporate status and to facilitate the raising of investment capital
(hereinafter stock maintenance costs). The department disallowed these
costs. On June 8, 1979, Administrative Law Judge Helen Gallagher of the
Office of Administrative Hearings ruled that plaintiffs were entitled to reim-
bursement. On June 20, 1980, the Director of the Department of Health
Services (hereinafter Director) issued a decision reversing Administrative
Law Judge Gallagher on this issue. Plaintiffs challenged the Director's de-
cision by petitioning for a writ of mandate. Plaintiffs appeal from the judg-
ment denying their petition.

During the years in question reimbursement of costs incurred by providers
of health care services to Medi-Cal patients was governed by the Medicare
Act (42 U.S.C. § 1395 et seq.) and its related regulations (20 C.F.R.
§ 405.100 et seq. (1973)). (See 42 U.S.C. § 1395v; former Cal. Admin.
Code, tit. 22, § 51508, Cal. Admin. Reg. 69, No. 4.) There are no reported
cases in either California or the Ninth Circuit discussing whether corporate
providers should be reimbursed for stock maintenance costs. We note, how-
ever, that Medi-Cal providers are now primarily reimbursed pursuant to a
selective contracting system. (Welf. & Inst. Code, § 14081 et seq.)

The stock maintenance costs as to which plaintiffs sought reimbursement
include stock exchange registration fees, stock transfer fees, proxy costs,
legal and accounting fees relating to Securities and Exchange Commission
filings, costs of stockholders' meetings and reports, and "institutional public
relations expenses relating to stock and financial matters."

Prior to 1972 the Medicare Act did not contain a definition of reasonable
costs. In 1972 title 42, United States Code, section 1395x of the Medicare
Act was amended to provide in pertinent part as follows: "(v)(1)(A) The
reasonable cost of any services shall be the cost actually incurred, excluding
therefrom any part of incurred cost found to be unnecessary in the efficient
delivery of needed health services, and shall be determined in accordance
with regulations establishing the method or methods to be used, and the
items to be included, in determining such costs . . . . Such regulations shall
(i) take into account both direct and indirect costs of providers of services

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chair-
person of the Judicial Council.

(excluding therefrom any such costs . . . which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered . . . . [¶] (B) Such regulations in the case of extended care services furnished by proprietary facilities shall include provision for specific recognition of a reasonable return on equity capital, including necessary working capital, invested in the facility and used in the furnishing of such services, in lieu of other allowances to the extent that they reflect similar items."

■ Plaintiffs contend that the stock maintenance costs were "indirect costs of providers of services" and "necessary costs of efficiently delivering covered services" within the definition quoted above and the statute's implementing regulations.

The regulations have at all relevant times provided that "[r]easonable cost includes all necessary and proper expenses incurred in rendering services, such as administrative costs . . . . However, where the provider's operating costs include amounts not related to patient care . . . such amounts will not be allowable." (42 C.F.R. § 405.451(c)(3) (1983).) Necessary and proper costs have at all relevant times been defined as "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities." (42 C.F.R. § 405.451(b)(2) (1983).)

Plaintiffs attempted to support their contention by introducing evidence that generally accepted accounting principles treat stock maintenance costs as an administrative cost and that such costs are reflected in charges made to private-paying patients. Plaintiffs rely on title 42, Code of Federal Regulations, section 405.406(a) (1983), which provides in pertinent part: "The principles of cost reimbursement will require that providers maintain sufficient financial records . . . for proper determination of costs payable under the program. Standardized . . . accounting . . . practices which are widely accepted in the hospital and related fields are followed."

■ The Director's decision disallowing the stock maintenance costs was based on language in title 42, Code of Federal Regulations, section 405.451(a) that "All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act *and related to the care of beneficiaries.*" (Italics by the department.) The decision also discussed guidelines 2150.1 and 2134.9 of the Provider Reimbursement Manual (HIM-15), which was issued in 1973 by the federal Bu-

reau of Health Insurance. (The Provider Reimbursement Manual was formally adopted by California in 1980. (Cal. Admin. Code, tit. 22, § 51536, subd. (b)(4).)) Section 2150.2, paragraph B.1. of the Provider Reimbursement Manual provides that stockholder servicing costs are not allowable organization costs. Section 2134.9 provides: "The following types of costs relevant to the proprietary and equity interests of the stockholders, but not related to patient care, are excluded from allowable costs: costs incurred primarily for the benefit of stockholders or other investors, including, but not limited to, the costs of stockholders' annual reports and newsletters, annual meetings, mailing of proxies, stock transfer agent fees, stock exchange registration fees, stockbroker and investment analysis, and accounting and legal fees for consolidating statements for SEC purposes."

The Director's decision reasoned that stock maintenance costs are not " ' "necessary and proper" ' " costs of rendering health services because such services can be furnished by noncorporate entities. The Director further noted that stock maintenance costs have as their essential purpose the protection of investors, not the rendition of medical care. The decision further stated that the guidelines are " 'not controlling inasmuch as they did not change the existing law as iterated by the regulation . . . .' "

■ In reviewing the judgment denying the petition for a writ of mandate, we must determine whether the Director's decision was arbitrary and capricious. (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 179 [70 Cal.Rptr. 407, 444 P.2d 79]; *Sun Towers, Inc.* v. *Heckler* (5th Cir. 1984) 725 F.2d 315, 336, cert. den., — U.S. — [83 L.Ed.2d 45, 105 S.Ct. 100].)

The few federal cases that have decided the issue are divided on the question whether stock maintenance costs should be reimbursed. In *AMI-Chanco, Inc.* v. *United States* (Ct. Cl. 1978) 576 F.2d 320, the court held that they should. The court reasoned that stock maintenance costs are part of a corporation's general and administrative expense and therefore are allowable costs under former title 20, Code of Federal Regulations, section 405.406(a) (1977) (now 42 C.F.R. § 405.406(a) (1983)). (*AMI-Chanco, supra,* 576 F.2d at pp. 323-324.) As previously mentioned, section 405.406(a) provides that standardized accounting practices widely used in the hospital field be used in financial records of providers that seek cost reimbursement. The court opined that the direction in title 42, United States Code, section 1395x that the regulations provide for a reasonable return on equity capital suggests that Congress also intended that stock maintenance costs, which are necessary to attract equity capital, be reimbursed. (*AMI-Chanco, supra,* 576 F.2d at p. 324.) Additional reasons given by the court for its conclusion were that a large amount of equity capital enables a corporation to borrow money at preferential interest rates—a fact the court may

have deemed significant because title 42, Code of Federal Regulations, section 405.419 (1983) provides that necessary and proper interest is an allowable cost—and that federal agencies other than the Department of Health, Education, and Welfare (now the Department of Health and Human Services) treat stock maintenance costs as indirect costs subject to reimbursement. (*AMI-Chanco, supra,* 576 F.2d at pp. 324-326.)

In *Am. Med. Intern., Inc.* v. *Sec. of H. E. W.* (D.D.C. 1979) 466 F.Supp. 605, affd., *American Med. Intern.* v. *Sec. of Health, etc.* (D.C.Cir. 1981) 677 F.2d 118, the court held that stock maintenance costs are not reimbursable under the Medicare Act. The court reasoned that such costs are "not reasonable costs *necessary* in providing medical services." (*Am. Med. Intern., Inc., supra,* 466 F.Supp. at p. 612, italics in original.) The court stated: "A crucial distinction must be drawn between costs which are necessary for the maintenance of a corporate structure and those which are necessary for providing medical services. . . . [The] relationship [of stock maintenance costs] to the provision of health care is too remote to allow them to be considered reasonable costs necessary to providing that care. [Citations.]" (*Id.,* at pp. 612-613, fn. omitted.)

The court in *Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp. 605, held that the distinction between allowing reimbursement for the interest expense relating to patient care and disallowing reimbursement for stock maintenance costs is reasonable since interest may only be reimbursed when a debt was incurred for a purpose primarily for medical care (see 42 C.F.R. § 405.419(b)(2)(ii) (1983) [loan must have been "for a purpose reasonably related to patient care"]) and the relationship of stock maintenance costs to medical services is "*too incidental to override the fact that the primary purpose of stock maintenance costs is to enhance investment.*" (*Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp. at p. 615, italics in original.) The court further stated that, since stock maintenance costs are not necessary to the rendition of medical care to Medicare patients, their disallowance does not shift the cost of such services to non-Medicare patients in violation of title 42, United States Code, section 1395x(v)(1)(A). (*Am. Med. Intern., Inc., supra,* 466 F.Supp. at p. 615.) Finally, the court stated that it was not significant that the guidelines of the Provider Reimbursement Manual were not issued pursuant to the federal Administrative Procedure Act (5 U.S.C. § 500 et seq.) because the guidelines were merely interpretive. (*Am. Med. Intern., Inc., supra,* 466 F.Supp. at pp. 615-616; see 5 U.S.C. § 553(b)(A).)

In *Humana, Inc.* v. *Heckler* (D.C.Cir. 1985) 758 F.2d 696 the District of Columbia Circuit Court of Appeals reaffirmed the position taken in *Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp. 605, stating

that employment by the Secretary of the Department of Health and Human Services (hereinafter Secretary) of a primary purpose test is reasonable and that, since the Medicare Act gives no preference to one particular organizational structure, subsidizing the continuing costs of a provider's choice of a corporate structure is not required. (*Humana, Inc., supra,* 758 F.2d at pp. 699-700.)

In *Sun Towers, Inc.* v. *Heckler, supra,* 725 F.2d 315, the plaintiffs had relied on the analysis contained in *AMI-Chanco, Inc.* v. *United States, supra,* 576 F.2d 320, in support of their assertion that stock maintenance costs should be reimbursed. The Court of Appeals stated that plaintiffs' argument strongly supported reimbursement but, noting that its review was limited to a determination whether the Secretary's decision was arbitrary or capricious, held that the Secretary's decision disallowing such reimbursement was neither irrational nor inconsistent with the purpose of the enabling legislation. (*Sun Towers, Inc., supra,* 725 F.2d at p. 330.)

*Sun Towers, Inc.* v. *Heckler, supra,* 725 F.2d 315, *Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp. 605, and *Humana, Inc.* v. *Heckler, supra,* 758 F.2d 696, are the better-reasoned cases. ▆▆ We find especially persuasive the observation by the *Sun Towers* court that, while the position taken in *AMI-Chanco, Inc.* v. *United States, supra,* 576 F.2d 320, might well have been a reasonable interpretation for the administrative agency to reach, the contrary position actually taken by the agency was neither arbitrary nor capricious.

▆▆ Plaintiffs contend that the manual provisions cited by the Director should not have been employed since they were not issued until 1973 and not adopted as part of the Medi-Cal program until 1980. Those facts are not dispositive, however, because the Director expressly stated that the guidelines were merely "interpretive" and "did not change the existing law." The Director's analysis in the matter under review was virtually identical to reasoning of *Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp 605, which was not dependent on the manual provisions in question.

▆▆ The contention that the stock maintenance costs were necessarily incurred because state law required the holding of annual shareholder meetings and the distribution of an annual shareholder report is adequately addressed by *Sun Towers, Inc.* v. *Heckler, supra,* 758 F.2d 315, 327, and *Am. Med. Intern., Inc.* v. *Sec. of H. E. W., supra,* 466 F.Supp. 605, 612-613. The issue is not whether the costs were necessary to plaintiffs' corporate existence but rather whether it was reasonable for the Department of Health Services to conclude that the costs were unnecessary to the providing of medical care to Medi-Cal patients.

 While plaintiffs contend that the Provider Reimbursement Manual should not be used to deny them reimbursement of stock maintenance costs, plaintiffs themselves rely on certain provisions of that manual in contending that stock maintenance costs should be reimbursed as costs incident to preferential debt financing. Because the manual had not been adopted as part of the California Administrative Code during the years in question, its provisions do not require the treatment of stock maintenance costs urged by plaintiffs.

 Plaintiffs continue to maintain that the stock maintenance costs should be reimbursed for the reason that they are part of plaintiffs' general and administrative costs relating to hospital operations. Plaintiffs rely on testimony at the administrative hearing that stock maintenance costs are considered costs of administration under generally accepted accounting principles and point to the provision in title 42, Code of Federal Regulations, section 405.406(a) that standardized accounting practices within the hospital field are to be used in financial reports under the Medicare program.

In *North Clackamas Community Hospital* v. *Harris* (9th Cir. 1980) 664 F.2d 701, 706, footnote 16, the court stated that, while the Secretary normally follows generally accepted accounting principles in evaluating claims for reimbursement, where these practices "do not accurately reflect the cost of patient care, as opposed to the cost of running a business," (*ibid.*) the Secretary may prescribe different accounting practices. (*Ibid.;* cf. *Villa View Community Hosp., Inc.* v. *Heckler* (9th Cir. 1983) 720 F.2d 1086, 1093, fn. 18 [when Secretary has not prescribed different practices by regulation, generally accepted accounting principles must be applied]; *id.,* at p. 1095 [since Secretary failed to suggest a regulation which in fact precluded the costs in issue, the question whether they should be reimbursed depended on generally accepted accounting principles].) In the case at bench the Director relied on a specific regulation (42 C.F.R. § 405.451(a)) for the position that the stock maintenance costs did not "accurately reflect the cost of patient care, as opposed to the cost of running a [corporate] business." (*North Clackamas, supra,* 664 F.2d at p. 706, fn. 16.) While that regulation does not specify that a particular accounting method be used, we do not believe the Director's interpretation of the regulation is either arbitrary or capricious. (See *Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172, 179; *Sun Towers, Inc.* v. *Heckler, supra,* 725 F.2d 315, 330, 336.)

 Plaintiffs contend that, since there is no regulation which disallows the costs of nonprofit corporations' meetings and annual reports, those costs should not be disallowed for profit-making corporations. Testimony at the administrative hearing established that these costs of nonprofit corporations are reimbursed. Plaintiffs rely on title 42, Code of Federal Regulations,

section 405.402(b)(5), which provides that nonprofit and profit-making organizations should be treated equitably by the Medicare program. Since nonprofit organizations .do not receive treatment similar to the return on equity allowed to the profit-making corporations and since the principal purpose of the nonprofit corporations' meetings and reports are to provide quality medical care as contrasted with the principal purpose of profit-making corporations' annual reports and meetings, which is to provide for communication relative to investment, the disparate treatment is equitable.

■ Finally, plaintiffs contend that, since the Armed Services Procurement Regulations and the Federal Procurement Regulations allow stock maintenance costs to be compensated as part of the cost of goods purchased (see *AMI-Chanco, Inc.* v. *United States, supra,* 576 F.2d 320, 325-326), such costs should be reimbursed here. We reiterate, the fact that other agencies may reimburse these costs and the fact that the Director here could well have reasonably decided this close question in a contrary manner does not cause the Director's decision to be arbitrary or capricious.

The judgment is affirmed.

Spencer, P. J., and Lucas, J., concurred.