[No. B117712. Second Dist., Div. Four. June 7, 2000.]

SIMI VALLEY ADVENTIST HOSPITAL et al., Plaintiffs and Appellants,
v.
DIANA BONTA´, as Director, etc., Defendant and Respondent.

## COUNSEL

Mitchell R. Miller and Jacob N. Segura for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Richard T. Waldow, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BERLE, J.**\*—In this consolidated appeal, six hospitals challenge the trial court's denial of their petitions for writ of mandate with respect to the State Department of Health Services's methodology in computing certain elements of Medi-Cal reimbursement. The judgment is affirmed as to the untimeliness of the administrative appeals regarding certain specific claims for reimbursement. However, since the trial court failed to rule on the legitimacy of department regulations relating to the methodology of reimbursement calculations, the case must be reversed and remanded.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Under the Medi-Cal legislative scheme, California grants financial assistance to beneficiaries who are unable to afford medical services and care. The Medi-Cal program (Welf. & Inst. Code, § 14000 et seq.), administered by the State Department of Health Services (the Department), is an implementation of the federal Medi-Care plan (42 U.S.C. §§ 1396-1396v). Pursuant to Medi-Cal, participating health care providers, such as hospitals, receive reimbursement directly from the Department for providing medical care to Medi-Cal beneficiaries. (Welf. & Inst. Code, § 14000 et seq.; Cal. Code Regs., tit. 22, § 50000 et seq.) The amounts of reimbursement are subject to cost limitation guidelines which establish a maximum reimbursement ceiling calculated at the lesser of (1) customary charges; (2) allowable costs determined in accordance with applicable Medi-Care standards and principles of reimbursement; and (3) the "all-inclusive rate per discharge." (Cal. Code Regs., tit. 22, § 51536.) The rate per discharge is adjusted through a formula which takes into consideration the number of Medi-Cal patient discharges and the hospital's allowable Medi-Cal costs adjusted for inflation by the hospital cost index (HCI). (Cal. Code Regs., tit. 22, § 51536, subds. (f)-(i).) The rate per discharge is further refined by peer group limitations (Cal. Code Regs., tit. 22, § 51539) to yield a "maximum inpatient reimbursement limit"

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution

(MIRL). Regulations dictate the amount by which the rate per discharge may increase above the rate allowed in previous years. (Cal. Code Regs., tit. 22, § 51536, subds. (c)-(i).)

For each fiscal year, the Department provides written notification to hospital providers of their particular applicable MIRL in the form of a letter called "final settlement" of the MIRL. This MIRL decision of the Department is subject to administrative appeal. (Cal. Code Regs., tit. 22, § 51016; Welf. & Inst. Code, § 14171.)

In 1980, the Department used the *midpoint* method for MIRL calculations. Under this approach, a hospital's prior year's rate per discharge is multiplied by the allowable change in rate to yield a rate per discharge for the subsequent (or settlement) year. During the period of approximately 1981-1989, the Department used a different methodology for the calculation of the rate per discharge known as *averaging*.[1] Under the averaging formula, the subject (settlement) year's rate per discharge at the beginning of the year (end of previous year) is applied to the allowable change in rate to compute a rate per discharge at the end of the settlement year at issue, and the two rates are then averaged to derive an allowable rate per discharge for that entire settlement year.

When the averaging method for calculation of MIRL was first introduced, hospitals were twice informed: (a) by letter from the Department dated September 18, 1981, notifying hospitals of the averaging methodology; and (b) by the annual MIRL statement for the first period in which the averaging method was used.

In 1989, the Department again modified its policy by returning to the midpoint method for calculation of the MIRL. According to the Department Medi-Cal policy analyst, the Department at that time believed that the midpoint method produced calculations which more closely reflected the intent of the governing regulation.[2] The Department notified hospital providers of the change back to the midpoint method in a letter (MIRL letter) referencing "Revisions to Maximum Inpatient Reimbursement Liability Formula."[3] The letter stated: "Henceforth, all MIRL settlements will be computed by applying the adjusted HCI to the prior year's allowable rate per discharge. Thus, no averaging technique will be utilized. [¶] . . . [¶] The

---

[1] The averaging method was introduced by the Department to take into account the fact that the fiscal years of different hospitals did not necessarily coincide.

[2] None of the regulations actually spell out the methodology for the calculation of the rate of discharge.

[3] MIRL letters to petitioners were dated as follows: Simi Valley Adventist Hospital—August 31, 1989; Loma Linda University Medical Center—September 19, 1989; Anaheim

liabilities assessed in previously closed years will not be amended; neither additional recoupment of monies nor refunds of sums recouped shall be made by the Department. Final settlement years whose appeal rights have been exhausted or not previously utilized will not be given new appeal rights."

With the individual MIRL letter sent to each respective hospital provider, the Department provided copies of prior year settlements recomputed on the midpoint method to show how those settlements compared to the current year's calculations. The prior period statements were generated to demonstrate the flow-through effects of the midpoint methodology in order to enable the hospitals to maintain consistency in year to year MIRL accounting. Each MIRL letter to a hospital informing of the reversion to midpoint methodology advised which fiscal years of that hospital were closed for any appeals.[4]

Petitioner hospitals, Simi Valley Adventist Hospital (Super. Ct. L.A. County, No. BS019700), Loma Linda University Medical Center (Super. Ct. L.A. County, No. BS020533), Anaheim Memorial Hospital (Super. Ct. L.A. County, No. BS020745), Calexico Hospital (Super. Ct. L.A. County, No. BS025274), Hi-Desert Medical Center (Super. Ct. L.A. County, No. BS026785), and Villa View Community Hospital (Super. Ct. L.A. County, No. BS026937),[5] filed appeals with the Department regarding repayment of the difference between the MIRL as originally calculated under the averaging technique and as recalculated by the Department under the revised midpoint methodology. After hearing, the administrative law judge issued a proposed decision denying the appeals. Thereafter, the Department director adopted the proposed decision as a final decision of the Department.

Seeking review of the Department decision, petitioners instituted a proceeding in the superior court requesting: (a) writ of mandate reversing the Department's final decision denying petitioners' appeals and requiring the Department to recompute Medic-Cal reimbursements and pay petitioners claimed amounts due; and (b) a judgment declaring that the MIRL as

---

Memorial Hospital—August 6, 1990; Calexico Hospital—August 14, 1990; Hi-Desert Medical Center—September 18, 1989; Villa View Community Hospital—September 4, 1990.

[4]Petitioners were specifically advised which fiscal years were considered closed. The MIRL letters set forth the most recent closed fiscal year and a statement that all prior years were also closed. The closed periods identified were all years prior to and including the fiscal years ending on the following dates for the respective hospitals: Simi Valley Adventist Hospital—December 31, 1986; Loma Linda University Medical Center—June 30, 1983; Anaheim Memorial Hospital—September 30, 1982; Calexico Hospital—June 30, 1983; Hi-Desert Medical Center—June 30, 1983; Villa View Community Hospital—June 30, 1983.

[5]The cases were consolidated into lead case No. BS019700.

adopted, implemented and administered by the Department violates federal and state constitutional, statutory and regulatory requirements.

The trial court denied the petitions for writ of administrative mandate under Code of Civil Procedure section 1094.5, holding that the Department did not abuse its discretion in ruling that petitioners' appeals from determinations in closed fiscal years were untimely. The court did not address the issues concerning petitioners' request for writ of mandate under Code of Civil Procedure section 1085 or declaratory relief with respect to the MIRL methodology adopted by the Department.[6]

Petitioners' appeal from the judgment of the court entered on the denial of the petitions.

## DISCUSSION

I. *Petition for Administrative Mandate Relating to Denial of Claims for Reimbursement (Code Civ. Proc., § 1094.5)*

Under California Code of Regulations, title 22, section 51536, subdivision (j)(3)(A), a hospital provider may request an administrative adjustment to its reimbursement rate within 60 days after notification by the Department of the applicable rate. After the Department's decision on the administrative adjustment, a hospital has a further 60 days to file an administrative appeal under Welfare and Institutions Code section 14171, subdivision (b).

■ After petitioners received their respective MIRL letters concerning revisions to the MIRL formula, they requested administrative adjustment of the rates applicable to the closed settlement years referred to in the flow-through recalculation figures provided by the Department with the letters. The adjustments were denied and petitioners pursued administrative appeals. The administrative law judge found that the appeals were untimely as to the closed fiscal periods. The Department adopted the administrative law judge's determinations in its final decision. The Department concluded that the MIRL letter did not constitute a new tentative or final settlement letter for fiscal years that had already been closed and the letter did not change any rate or liability for prior years to give rise to any new appeal rights; rather, the letter informed each hospital of the Department's intent with respect to computing future MIRL rates based upon the use of the midpoint methodology. Upon review in the superior court, the trial court found that the Director of the Department "did not prejudicially abuse her discretion.

---

[6]These issues were raised in the petitions, petitioners' motion for peremptory writ, and at oral argument.

Petitioners' appeals pertaining to the closed fiscal periods are untimely. Petitioners had prior notice of the changes in methodology but failed to appeal those changes within the time provided by regulations. As such, petitioners cannot now challenge the implementation of the changes in this proceeding."

The facts before the court are not in dispute.[7] All parties concur that the Department modified the methodology used in calculation of MIRL from averaging to midpoint and gave notice to petitioners of that change. Petitioners contend that by providing additional information with the MIRL letters concerning prior year recalculations for flow-through comparison purposes, the Department reopened the prior years' closed settlements, giving rise to new appeals under California Code of Regulations, title 22, section 51536.

 To the extent that the decision with respect to the timeliness of petitioners' administrative appeals called for the Department to interpret its own regulations, great deference must be accorded to the agency's interpretation. (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1027 [56 Cal.Rptr.2d 109, 920 P.2d 1314]; *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; *Californians for Political Reform Foundation v. Fair Political Practices Com.* (1998) 61 Cal.App.4th 472, 484 [71 Cal.Rptr.2d 606]; *Intercommunity Medical Center v. Belshé* (1995) 32 Cal.App.4th 1708 [39 Cal.Rptr.2d 43]; *Department of Health Services v. Superior Court* (1991) 232 Cal.App.3d 776, 782 [283 Cal.Rptr. 546].) Moreover, "[w]here no challenge to the factual findings is made, the appellate court need only determine whether the Department's ruling was so arbitrary and capricious as to amount to an abuse of discretion." (*Intercommunity Medical Center v. Belshé, supra,* 32 Cal.App.4th 1708, 1711 [denial of administrative mandamus to reverse decision of Department upheld on appeal]; See also *American Medical Internat., Inc. v. Myers* (1985) 170 Cal.App.3d 1115 [216 Cal.Rptr. 810] [denial of writ of mandate to reverse decision of Department upheld].)

 The phrase "final settlement" is a term of art, which has a particular definition in the Code of Regulations with respect to the Department's determination of liabilities owed by a health care provider.[8] Based upon the proposed decision of the administrative law judge, the Department concluded that when the Department informs a provider of a change in computation methodology of MIRL, but does not seek either to recoup new or

---

[7]In appellants' opening brief, petitioners concede that "there [are] no facts in dispute . . . ." Petitioners then proceed to argue issues of law relating to adoption of standards and methods of reimbursement.

[8]California Code of Regulations, title 22, section 51536, subdivision (b)(10) states: "Final Settlement means a Department determination of liabilities owed resulting from an all-inclusive rate per discharge calculation based upon data audited and edited by the Department

reduce prior liabilities, such notice does not give rise to the right of filing an administrative adjustment "since no changes to final settlements are involved. 22 Cal. Code Regs., § 51536."

The MIRL letter specifically advised that "[f]inal settlement years whose appeal rights have been exhausted or not previously utilized will not be given new appeal rights." The decision of the Department that the MIRL letter did not constitute a new tentative or final settlement to reopen the appeal period was not arbitrary, capricious or an abuse of discretion. Based on the undisputed facts, such decision was legally mandated by the Department regulations.

Petitioners argue that the Department should be precluded from asserting the statutes of limitation and laches defenses because inadequate notice was given as to the averaging method of MIRL calculations in 1981. No authority or citation to the record is provided for this proposition.[9] In any event, petitioners do not deny that they received tentative settlement and final settlement statements containing calculations of reimbursement for each year at issue based upon the averaging method. Yet, petitioners did not appeal on any issue of the methodology used in the computation of MIRL for those years until the MIRL letter. Being aware of the rates and calculations and not appealing on those issues for the years in question, petitioners are not in a position to argue that the Department is somehow estopped from asserting a statute of limitation or laches defense to an untimely appeal. Petitioners mistakenly rely on *Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748 [55 Cal.Rptr.2d 107, 919 P.2d 721], which does not support their position. In *Belshé*, the Supreme Court held that the three-year limitations period under Welfare and Institutions Code section 14170 applies to a providers' cost data submission and not to a final settlement.[10] The Department may issue a final settlement and seek recoupment more than three years after the data submission. The Supreme Court did not rule on the issue of time limits of appeals *after* the final determination of reimbursement or *final settlement* by the Department.

and/or upon data provided by the Office of Statewide Health Planning and Development as being true and correct for the final settlement year."

[9]However, petitioners acknowledge that they received notice of the averaging method by a "set of blank forms sent out in September 1981, and the fact that the Department continued to follow the averaging method for approximately eight years."

[10]As indicated in footnote 4 to the *Belshé* case, "final settlement" has a specified definition under California Code of Regulations, title 22, section 51536, subdivision (b)(10). (*Robert F. Kennedy Medical Center v. Belshé, supra*, 13 Cal.4th at p. 753, fn. 4.)

II. *Petition for Peremptory Writ of Mandate (Code Civ. Proc., § 1088) and Request for Declaratory Relief (Code Civ. Proc., § 1060)*

Petitioners claim that MIRL, as adopted, implemented and administered by the Department constitutes an "underground regulation" not authorized by law and void *ab initio*.

■ Rulemaking by an administrative agency is quasi-legislative in character and has the same force and effect of law. (*Dabis v. San Francisco Redevelopment Agency* (1975) 50 Cal.App.3d 704 [122 Cal.Rptr. 800].) As with statutory law, the validity of regulations is subject to judicial review. (*RLI Ins. Co. Group v. Superior Court* (1996) 51 Cal.App.4th 415, 430 [59 Cal.Rptr.2d 111]; *County of Santa Cruz v. State Bd. of Forestry* (1998) 64 Cal.App.4th 826, 830 [75 Cal.Rptr.2d 393]; *Caldo Oil Co. v. State Water Resources Control Bd.* (1996) 44 Cal.App.4th 1821 [52 Cal.Rptr.2d 609].) The appropriate procedure to be used for review of administrative regulation is a petition for traditional mandamus under section 1085 of the Code of Civil Procedure or an action for declaratory relief under section 1060 of that code. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 168-169 [188 Cal.Rptr. 104, 655 P.2d 306]; *Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1149 [2 Cal.Rptr.2d 558]; and *County of L.A. v. State Dept. Pub. Health* (1958) 158 Cal.App.2d 425, 443 [322 P.2d 968].) The Administrative Procedures Act, Government Code section 11350, subdivision (a), specifically provides that "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure. . . ."

Various appellate cases discuss the province of the court to provide judicial review of administrative regulations. In *Grier v. Kizer* (1990) 219 Cal.App.3d 422 [268 Cal.Rptr. 244], disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 577 [59 Cal.Rptr.2d 186, 927 P.2d 296], the petitioner physician challenged the Department's audit methodology as not authorized by any administrative regulation. The Court of Appeal upheld the Office of Administrative Law ruling that the audit method was invalid as an improper " 'underground' " regulation which had not been properly adopted pursuant to the Administrative Procedures Act. (*Grier v. Kizer, supra,* 219 Cal.App.3d at p. 440; see also *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th 557 [upholding wage orders but voiding Labor Commissioner policy as a regulation not in compliance with Administrative Procedures Act]; *Union of American Physicians & Dentists v. Kizer* (1990) 223 Cal.App.3d 490 [272 Cal.Rptr. 886] [Department's use of random sampling and extrapolation of audit findings constitute invalid underground regulations].)

The trial court's ruling was limited to review of the Department's order denying petitioners' appeals regarding certain claims for reimbursement as untimely. Petitioners' second cause of action challenged the validity of both the *averaging* method, utilized by the Department between 1981 and 1989, and the *midpoint* method, adopted in 1989. It sought a declaration that each method was adopted in violation of California statutes and regulations. While declaratory relief relating to the *averaging* method may be moot to the extent any claims for reimbursement may fall outside the applicable statute of limitations, petitioners still have a right to a declaration of rights relating to each method for claims that are not so foreclosed. Consequently, this case must be returned to the superior court for further proceedings on this cause of action.

### DISPOSITION

The judgment is affirmed with respect to the trial court's ruling upholding the Department's determination that petitioners' claims for reimbursement were untimely; the judgment is reversed as to all other matters. The case is remanded to the superior court for further proceedings consistent with this decision. Each party is to bear its own cost on appeal.

Hastings, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied June 29, 2000, and the opinion was modified to read as printed above.